**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                              :
RAY RODRIGUEZ,                :
                              :  Civil Action No. 12-1656 (RBK)
            Petitioner,       :
                              :
      v.                      :  **MEMORANDUM OPINION**
                              :
J.T. SHARTLE,                 :
                              :
            Respondent.       :
_____:

This matter comes before this Court upon: (a) receipt of a clarification graciously provided by Petitioner's sentencing court,[1] see Docket Entry No. 6; and (b) Respondent's prompt filing of an expedited answer.[2]

___

[1] Pursuant to this Court's prior order, the Clerk served a complimentary copy of the same on Honorable Legrome D. Davis ("Judge Davis") of the United States District Court for the Eastern District of Pennsylvania, since Judge Davis was Petitioner's sentencing judge for the purposes of Petitioner's federal sentence underlying his currently served term of imprisonment.  The Court's order to that effect and the Clerk's service took place shortly prior to close of business on October 26, 2012.  The following Monday, the north-eastern coastal United States states were ravaged by Hurricane Sandy, which devastated the population, facilities and infrastructure of these states, direly affecting, inter alia, federal court facilities and the members of federal judiciary.  Notwithstanding the foregoing, Judge Davis provided his clarification on November 1, 2012, that is, on the very first day when the federal judiciary of this state resumed its operations.  The Court takes this opportunity to note its gratitude to Judge Davis for his gracious courtesy.

[2] Commendably, the Office of the United States Attorney for the District of New Jersey filed a thorough and thoughtful expedited answer on November 2, 2012, together with the pertinent record, without seeking any extension of time, even though the

For the reasons detailed below, the Court will construe the Petition within as asserting challenges based on the holding of Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002), and will dismiss these challenges with prejudice.[3]

Petitioner's challenges based on the holding of Barden v. Keohane, 921 F.2d 476 (3d Cir. 1991), and/or Willis v. United States, 438 F.2d 923 (5th Cir. 1971), and/or Kayfez v. Gasele, 993 F. 2d 1288 (7th Cir. 1993), that is, provided such challenges were intended, will be dismissed as improperly raised in this

---

staff and facilities of the United States Attorney's Office were, as everyone in the State of New Jersey, direly affected by Hurricane Sandy and its aftermath.  The Court takes this opportunity to note both excellent speed and thoroughness of the answer filed by Respondent's counsel.

[3] Respondent's answer included an application for taxing the cost incurred by Respondent in connection with obtaining Petitioner's sentencing transcript (which is the document at the heart of Petitioner's Ruggiano challenges, and which document revealed that Petitioner's Ruggiano claim was wholly baseless) against Petitioner.  This Court already noted its deep concern with Petitioner's litigation practices, see Docket Entry No. 3, at 5 and n. 3, and – reiterating the same – the Court puts on record that it shares in Respondent's disappointment with Petitioner's allegations which: (a) asserted that Judge Davis' uttered statements warranting Ruggiano-based habeas relief; but (b) have been proven false by the record provided by Respondent. However, while Respondent is correct that, pursuant to 28 U.S.C. § 1920(2), the Court has the power to tax Respondent's expense against Petitioner, the Court finds such measure unduly excessive in light of Petitioner's pro se litigant status (suggesting a, however small, likelihood of Petitioner's bona fide confusion as to the pertinent law).  Therefore, Respondent's application is duly noted but will be denied.  The Court notes, however, that Petitioner's resort to the same litigation practices in the future will not be tolerated and might result in sanctions, if appropriate.  See infra, this Memorandum Opinion, note 5.

2

matter, pursuant to Habeas Rule 2.[4]  Out of abundance of caution, the Court will direct the Clerk to open a new and separate habeas matter for Petitioner with a presumption that Petitioner might have wished to raise such challenges.  On the basis of such presumption, and in light of the information provided in the attachment to the Petition, these challenges will be dismissed without prejudice, as unexhausted.  Petitioner, however, will be granted leave to file an amended pleading, provided that such amended pleading shows due administrative exhaustion of his Barden and/or Willis and/or Kayfez challenges and states facts supporting these claims.[5]

---

[4]
   It is axiomatic that Habeas Rule 2(e) requires separate
   petitions to challenge [each] separate [administrative]
   determinations.  See 28 U.S.C. § 2254 Rule 2(e),
   applicable to § 2241 cases through Rule 1(b).  Here,
   Petitioner challenged the [prison officials'] decision
   to calculate Petitioner's sentence [in light of the
   holding of Ruggiano.  However, simultaneously,]
   Petitioner [asserted challenge  unrelated to Ruggiano,
   which should have given] rise to a wholly different
   [administrative] determination that, under Habeas Rule
   2(e), had to be [challenged in this District} by means
   of a different [habeas] petition.

Muniz v. Zickefoose, 2011 U.S. Dist. LEXIS 115766, at *13 (D.N.J. Sept. 30, 2011), aff'd, 460 F. App'x 165 (3d Cir. 2012).

   [5]  In the event Petitioner duly exhausted his administrative remedies with all three levels of the BOP but has no records of such complete exhaustion, Petitioner shall state the same clearly and provide this Court and Respondent with *all* information Petitioner has.  The Court, then, will direct Respondent to search the BOP administrative records.  The Court, however, takes

**I.    BACKGROUND**

Petitioner commenced this matter without submitting his in forma pauperis application and without paying his filing fee. See Docket Entry No. 1.  The Court, therefore, directed administrative termination of this matter, and allowed Petitioner an opportunity to cure the deficiency of his submission.  See Docket Entry No. 2.  Petitioner, thereafter, cured said deficiency by prepaying his filing fee.  Correspondingly, the Court screened the Petition pursuant to Habeas Rule 4.[6]

The Petition proved to be of less than exemplar clarity, since it: (a) asserted that Petitioner was seeking a § 2241 writ

---

this opportunity to remind Petitioner that all his statements made in the original Petition and in the amended petition, if such is filed, were and are made under penalty of perjury.  The Court, therefore, urges Petitioner to make only those statements with regard to which Petitioner, in fact, has bona fide belief that these statements are true and supported by facts.

[6] Habeas Rule 4 requires a judge to sua sponte dismiss a § 2254 petition without ordering a responsive pleading "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." 28 U.S.C. § 2254 Rule 4, applicable to Section 2241 actions through Habeas Rule 1(b).  "Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." McFarland v. Scott, 512 U.S. 849, 856 (1994).  Correspondingly, dismissal without the filing of an answer has been found warranted when "it appears on the face of the petition that petitioner is not entitled to [habeas] relief." Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989); see also United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (habeas petition may be dismissed where "none of the grounds alleged in the petition would entitle [petitioner] to [habeas] relief"); accord Mayle v. Felix, 545 U.S. 644, 655 (2005) (same).

pursuant to the holding of Ruggiano v. Reish on the grounds that Judge Davis directed retroactive adjustment of Petitioner's federal sentence by uttering certain, not elaborated in the Petition, oral statements during Petitioner's federal sentencing proceedings, see Docket Entry No. 1, at 6-7 (citing, exclusively, the United States Sentencing Guidelines § 5G1.3, Ruggiano and its progeny as legal bases for Petitioner's claim); and yet, simultaneously, (b) used the term "credit" commonly employed by the litigants seeking recalculation of their prison terms pursuant to the holdings of Barden, 921 F.2d 476, or Willis, 438 F.2d 923, or Kayfez, 993 F. 2d 1288.  See Docket Entry No. 1, at 7 and 11-12.  Petitioner's attachment to his Petition suggested that, administratively, he raised his claims only to his warden. See id.

   Although Petitioner's § 2241 challenges appeared subject to dismissal without prejudice (as administratively unexhausted), the Court – prior to entering such dismissal - examined Petitioner's information available at the BOP website in order to determine whether circumstances warranting excuse of exhaustion were present.[7]  The Court's review of Petitioner's BOP

---

[7] Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging  the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Bradshaw v.

information revealed that his projected release date was August 7, 2013. See <<http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=48552-066&x=71&y=19>>. Since Petitioner's pleading maintained that, pursuant to Judge Davis' downward adjustment directive, Petitioner's release from federal confinement had to take place ten months sooner, that is, on November 7, 2012, this Court found it warranted to excuse Petitioner's failure to exhaust his Ruggiano challenges. See Docket Entry No. 3, at 5 and n. 3 (noting, with disapproval, Petitioner's election to omit stating his projected release date in his Petition and pointing out that, "had this Court not checked Petitioner's BOP information . . . , Petitioner could, hypothetically, overserve his imposed term of imprisonment").

Correspondingly, the Court directed: (a) Respondent to file an expedited answer addressing Petitioner's Ruggiano claims, see id. at 7; and (b) the Clerk to serve a complimentary copy of the Court's order on Judge Davis so to inform Judge Davis of

---

Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973). However, exhaustion not required where, for instance, delay would subject petitioner to "irreparable injury." See Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000); accord Ferrante v. Bureau of Prisons, 990 F. Supp. 367, 370 (D.N.J. 1998) (excusing failure to exhaust where it appeared that, if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon) (citing Snisky v. Pugh, 974 F. Supp. 817, 819 (M.D. Pa. 1997)).

Petitioner's <u>Ruggiano</u>-based position and, if possible, obtain Judge Davis' clarification as to the federal sentence imposed upon Petitioner. <u>See</u> <u>id.</u> 6 and 8-9.

As noted <u>supra</u>, Judge Davis swiftly and graciously provided said clarification, stating, in pertinent part, as follows:

> Contrary to the assertions in Mr. Rodriguez's Petition [filed] under 28 U.S.C. § 2241, I did not grant a ten-month adjustment to Mr. Rodriguez's sentence. At all times, I intended that Mr. Rodriguez's July 12, 2010 sentence would run consecutively to any other sentence that Mr. Rodriguez must serve. My June 16, 2011 Order merely [recommended the BOP to] grant[] Mr. Rodriguez a sentencing credit, which I referred to the Federal Bureau of Prisons for calculation — a policy which I have maintained for more than two decades. To the extent that the Bureau of Prisons has calculated that Mr. Rodriguez is entitled to a sentencing credit of zero-days, such a finding does not conflict with my Order.

Docket Entry No. 6.

Meanwhile, Respondent obtained Petitioner's sentencing transcript and, in reliance on the same and in full accord with the above-quoted Judge Davis' clarification, asserted that Petitioner was never granted any downward adjustment. <u>See</u> Docket Entry No. 7, at 1-2 (quoting Petitioner's sentencing transcript and correctly distilling Judge Davis': (a) keen awareness of Petitioner's recidivist record; and (b) lack of any intent to resort to his power to grant downward adjustment).

7

**II.   DISCUSSION**

    **A.   Difference Between an "Adjustment" and "Credits"**

Any computation of a federal sentence starts with a determination when that sentence commences and to what extent the sentenced inmate can receive credit for time spent in custody prior to the commencement of sentence.  See Chambers v. Holland, 920 F. Supp. 618, 621 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996).

For offenses committed on or after November 1, 1987, determinations regarding the commencement of federal sentence are governed by 18 U.S.C. § 3585(a), and the issue of prior custody credit is governed by 18 U.S.C. § 3585(b).[8]  The authority of the Attorney General to compute sentences has been further delegated to the BOP by operation of 28 C.F.R. § 0.96 (1996).  See United States v. Brann, 990 F.2d 98, 103—04 (3d Cir. 1993).

"A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be

---

[8]  The provisions of § 3585 were designed to retain the same basic authority for sentence computation in the Attorney General as under its predecessor statute.  See United States v. Wilson, 503 U.S. 329 (1992).

served."[9]  18 U.S.C. § 3585(a).  A related provision, Section 3584 clarifies:

> Imposition of concurrent or consecutive term.  - If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt.  Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively.  Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

18 U.S.C. § 3584(s).

Thus, an inmate's federal sentence begins to run upon his/her receipt in federal custody – unless the district court imposing the inmate's federal sentence expressly directs either full or partial retroactive concurrence with another, already existing and still running sentence served by the inmate.  See Ruggiano, 307 F.3d at 132 (sentencing court has authority under 18 U.S.C. § 3584 and United States Sentencing Guidelines § 5G1.3(c) to order a federal sentence to be fully and retroactively concurrent to a state sentence the defendant was already serving); see also Oregon v. Ice, 555 U.S. 160, 168-69

---

[9]  Thus, a federal sentence does not begin to run when a federal defendant is produced for prosecution by a Writ of Habeas Corpus Ad Prosequendum from state custody.  See Barden, 921 F.2d 476; Chambers, 920 F.2d at 622.

9

(2010) (judges have traditionally had broad discretion in selecting whether the sentence they impose will run consecutively or concurrently with respect to other sentences that they impose, or that have been imposed in other proceedings, even state proceedings); accord Setser v. U.S., 132 S. Ct. 1463.[10]

Due to the unique power of federal judiciary to direct such retroactive concurrence, it has been numerously observed that a district court's order directing said concurrence cannot be qualified as a "credit" against an inmate's sentence.

> The Guidelines cautions sentencing courts that, "[t]o avoid confusion with the Bureau of Prisons' . . . authority provided under 18 U.S.C. § 3585(b) to grant credit . . . the [Sentencing] Commission recommends that any downward departure under . . . application note [3(E) in § 5G1.3] be clearly stated . . . as a downward departure pursuant to § 5G1.3(c), rather than as a credit for time served."  U.S.S.G. § 5G1.3 cmt. n.3(E); see also Ruggiano, 307 F.3d at 133 ("[W]e encourage sentencing courts in the future to avoid using the term 'credit' to refer to § 5G1.3 adjustments so as not to engender any unnecessary confusion").  In Ruggiano, we [expressly guided] that sentencing courts should use the term "adjustment," rather than "credit" or "downward departure," in order to avoid confusion

---

[10]   In Setser, the Supreme Court considered whether the district court, in sentencing a defendant for a federal offense, has authority to order that the federal sentence be consecutive to an anticipated state sentence that has not yet been imposed. The Court ruled that a district court has the discretion to impose a federal sentence to run consecutively to an anticipated state sentence that has not yet been imposed, and that in the Setser case, the district court's decision to require defendant to serve his federal sentence consecutive to one anticipated state sentence and concurrent with another anticipated state sentence was not rendered unreasonable when the state court later ordered its two sentences to run concurrently.

> when applying Guidelines § 5G1.3.  [See Ruggiano,] 307 F.3d at 133.  However, Application Note 3(E) to Guidelines § 5G1.3, which came into effect after Ruggiano, indicates that the appropriate terminology is "downward departure."

United States v. Gaskins, 393 F. App'x 910, 914 and n. 2 (3d Cir. 2010).

In contrast, § 3585(b) governs the process of BOP calculating an inmate's sentence; such calculation often results in the inmate obtaining a certain "credit."  Within the context of Section 3585 and other statutory provisions having a somewhat similar effect, the term "credit" might have numerous meanings.

First, it is self-evident that an inmate receives credit for the time spent in custody while actually serving his/her federal sentence: this is why sentences are finite and do expire.

Second, Section 3585(b) allows the inmate to use time served in custody prior to the imposition of his/her sentence towards the completion of that sentence when that custody was either "a result of the offense for which the sentence was imposed" or "a result of any other charge for which the [inmate] was arrested after the commission of the offense for which the sentence was imposed[, provided that such period of custody] that has not been credited against another sentence."  This last clause of this sentence is paramount, since it clarifies that the time spent in

11

custody cannot be credited toward a federal sentence if that time was already used to satisfy a non-federal sentence.[11]

That being said, pursuant to Kayfez v. Gasele, 993 F. 2d 1288, the BOP grants an amount of qualified double credit if the following three conditions are present: (1) the non-federal and federal sentences are ordered to run concurrent; (2) the raw effective full term ("EFT") date of the non-federal term is later than the raw EFT of the federal term; and (3) the non-federal raw EFT, after application of qualified non-federal presentence time, is reduced to a date that is earlier than the federal raw EFT date. See BOP Program Statement 5880.28. Hence, Kayfez provides the third scenario allowing an inmate to obtain "credit."

Fourth, an inmate is entitled to credit for time spent in non-federal pre-sentence custody during which he/she was denied bail if such denial was solely a result of a federal detainer: such credit is commonly referred to as "Willis" credit, since it ensues from the holding of Willis v. United States, 438 F.2d 923.

Finally, pursuant to 18 U.S.C. § 3621(b), the BOP has the authority to designate a state institution as the official facility for service of a federal sentence, and the BOP may implement such a designation nunc pro tunc. See Barden v.

---

[11] The Supreme Court has made clear that inmates are not allowed to such "double count" credit. See United States v. Wilson, 503 U.S. 329; see also Blood v. Bledsoe, 648 F.3d at 209.

Keohane, 921 F.2d at 478-79.[12]  Since such designation impacts the duration of an inmate's sentence, it is too commonly referred to as "credit," although such terminology is likely to be a misnomer.[13]

However, and crucially here, all aforesaid "credits" calculated and granted by the BOP are qualitatively different

---

[12]  Typically, a Barden scenario accrues when a state sentencing court directs the state sentence to run concurrently with the then-yet-to-be-imposed federal sentence, but the later imposed federal sentence is silent as to any concurrence (which silence, by operation of 18 U.S.C. § 3584, triggers consecutive terms, de facto nullifying the state-court-imposed concurrence). Therefore, if an inmate was in the primary custody of state authorities and is returned to such state custody after his/her federal sentence (imposed while the inmate is produced in the federal court pursuant to a Writ of Habeas Corpus Ad Prosequendum), and then released into federal custody upon expiration of his/her state term, the inmate has no guaranteed right to the state-court-imposed concurrence: rather, he/she must seek nunc pro tunc designation from the BOP, under Barden.

[13]  Section 3621(b) obligates the BOP to consider, in connection with an inmate's Barden application, the following five factors: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence -- (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."  Importantly, no statement entered by the state or federal sentencing courts is binding of the BOP so long as the agency considers these factors in good faith.  See, e.g., Galloway v. Warden of F.C.I. Fort Dix, 385 F. App'x 59 (3d Cir. 2010) (the BOP did not violate its § 3621(b) obligations when it declined nunc pro tunc designation to an inmate who sought Barden credit and, in support of his Barden application, produced passionate letters from the sentencing court which expressed its utmost displeasure with the BOP's decision not to grant the credit the sentencing court recommended).

from the power of a district court to direct downward adjustment under 18 U.S.C. § 3584, the United States Sentencing Guidelines § 5G1.3(c) and the holding of Ruggiano, 307 F.3d at 132.

**B.   Petitioner's Ruggiano-Based Challenges Are Meritless**

In the instant matter, the Petition solely and expressly seeks a Ruggiano-based adjustment. See Docket Entry No. 1.

To determine what type of adjustment, if any, Judge Davis intended to apply, "the appropriate starting point is to ascertain the meaning that we should ascribe to the sentencing court's directives." Rios v. Wiley, 201 F.3d 257, 264 (3d Cir. 2000). Only when the oral pronouncement of sentence and written sentence are in conflict, the oral sentence prevails. See United States v. Chasmer, 952 F.2d 50, 52 (3d Cir. 1991). Conversely, when there is no conflict, "but rather only ambiguity in either or both [sentence pronouncements], we have recognized that the controlling oral sentence 'often [consists of] spontaneous remarks' that are 'addressed primarily to the case at hand and are unlikely to be a perfect or complete statement of the surrounding law.'" Ruggiano, 307 F.3d at 133 (quoting Rios, 201 F.3d at 268). Self-evidently, if both oral and written directives of the sentencing court were silent as to downward adjustment, no Ruggiano-based claim could ensue.

Here, the record provided by Respondent shows neither ambiguity in Judge Davis' oral and written directives nor any

14

conflict between Judge Davis' oral pronouncement and written sentence. See Docket Entry No. 7-1; see also USA v. Rodriguez, Crim. Action No. 95-95 (LDD) (E.D. Pa.), Docket Entry No. 48. If anything, the record unambiguously shows that Judge Davis did not find it warranted to exercise his power to direct downward adjustment for the purposes of Petitioner's sentencing. See id. Judge Davis' letter, graciously provided in response to the Clerk's complimentary service of this Court's prior order, verifies the same.[14] See Docket Entry No. 6.

Therefore, Petitioner's Ruggiano-based challenges will be dismissed as meritless.

### C. **Petitioner's Request for "Credit" Is Unexhausted**

Although Petitioner asserted only Ruggiano-based challenges in his Petition, the Court – being mindful of Judge Davis' resort to the term "credit" and of Petitioner's use of the same – cannot rule out the possibility that Petitioner might have wished to

---

[14] Indeed, Judge Davis' resort to the term "credit" in the clarification letter graciously provided to this Court, as well as Judge Davis' resort to the term "credit" in his letter issued to Petitioner on June 6, 2011, see USA v. Rodriguez, Crim. Action No. 95-95 (LDD) (E.D. Pa.), Docket Entry No. 61, indicated that Judge Davis merely offered his recommendation to the BOP (for the purposes of the agency's independent determination of whether to grant Petitioner credit or nunc pro tunc designation). Moreover, Judge Davis' clarification graciously provided to this Court expressly – and in full accord with the governing legal regime – verified that the BOP's decision to decline grant of credit to Petitioner neither did and nor could violate Judge Davis' non-binding recommendation. See Docket Entry No. 6.

seek one of the "credits" detailed supra.  However, in the event Petitioner wished to raise such challenges, his claims appear facially unexhausted.

The exhaustion doctrine promotes a number of goals: it is "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Goldberg v. Beeler, 82 F. Supp. 2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000); see also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Although exhaustion of administrative remedies is not required where exhaustion would not promote these goals, see, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"), the exhaustion requirement is not excused lightly.

Indeed, it has been long established that an inmate's unjustified failure to pursue administrative remedies results in

procedural default warranting decline of judicial review. The Court of Appeals addressed this issue in Moscato, 98 F. 3d 757, the case where an inmate filed a § 2241 petition after the Central Office had denied his administrative appeal as untimely. The Court of Appeals pointed out that the inmate's failure to satisfy the time limits of the BOP's administrative remedy program resulted in a procedural default, see id. at 760, rendering judicial review of his habeas claim unwarranted, that is, unless the inmate can demonstrate cause for his failure to comply with the procedural requirement[15] and, in addition, actual prejudice resulting from the alleged violation. See id. at 761.

    Clarifying the rationale of its decision, the Moscato Court explained that application of the cause and prejudice rule to habeas review of BOP proceedings insures that prisoners do not circumvent the agency and needlessly swamp the courts with petitions for relief, and promotes such goals of the exhaustion requirement (such as allowing the agency to develop a factual

---

[15] The "cause" standard requires a showing that some external objective factor impeded the inmate's efforts to comply with the procedural bar. See Murray v. Carrier, 477 U.S. 478, 488 (1986); United States v. Pelullo, 399 F. 3d 197, 223 (3d Cir. 2005) ("Examples of external impediments . . . include interference by officials") (citations and internal quotation marks omitted); Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004) ("cause" typically involves a novel constitutional rule, a new factual predicate, hindrance by officials in complying with the procedural rule, or akin). In contrast, a procedural default caused by ignorance of the law or facts is binding on the habeas petitioner. See Murray, 477 U.S. at 485-87.

record and apply its expertise facilitates judicial review, while conserving judicial resources, and fostering administrative autonomy by providing the agency with an opportunity to correct its own errors). See id. at 761-62; see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988).

As this Court already explained to Petitioner, the BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. See 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate shall submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request shall submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. See 28 C.F.R. § 542.15(a). The inmate shall appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. See id. Appeal to the General Counsel is the final administrative appeal. See id. If

responses are not received by the inmate within the time allotted for each reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Here, Petitioner's submission indicates that he raised his challenges solely to his warden. See Docket Entry No. 1. The patchiness of Petitioner's claims, as well as the seeming incongruence of his challenges presented for this Court's review, render his "credit"-based allegations particularly suited for administrative exhaustion, since a carefully developed administrative record and due distillment of Petitioner's claims would be more than helpful: they would be indispensable.

Therefore, the Court finds it unwarranted to excuse Petitioner's failure to exhaust his "credit"-based challenges and will dismiss them without prejudice. However, recognizing that Petitioner, being a pro se litigant, might have fully exhausted his "credit"-based challenges administratively and yet omitted stating this vital information in his Petition, this Court will allow Petitioner an opportunity to clarify both the exhaustion and substantive aspects of his "credit"-based claims, if any.

To facilitate that endeavor, this Court will direct the Clerk to open a new and separate § 2241 habeas matter for Petitioner and grant Petitioner leave to file an amended pleading in that new action.

**III. CONCLUSION**

For the foregoing reasons, Petitioner's challenges seeking downward adjustment will be dismissed with prejudice.

Petitioner's challenges seeking "credit," if such challenges were intended, will be dismissed, pursuant to Habeas Rule 2, as improperly raised in this matter. The Clerk will be directed to commence a new and separate Section 2241 matter for Petitioner in order to allow him an opportunity to detail his "credit"-based claims. These "credit"-based claims will be dismissed as unexhausted; however, Petitioner will be granted leave to file an amended pleading in that new matter showing full exhaustion and, in addition, detailing the facts of his "credit"-based challenges clearly and concisely, in accordance with the guidance provided herein.

Respondent's application for costs associated with obtaining Petitioner's sentencing transcript will be denied.

An appropriate Order accompanies this Memorandum Opinion.

s/Robert B. Kugler
**ROBERT B. KUGLER**
**United States District Judge**

Dated: November 4, 2012